**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**


**JOHN E. HARGROVE,**
     **Petitioner,**

                                     **Civil Action No.** 3:12-cv-124

**v.**                                 **Criminal Action No. 3:07-cr-58**
                                       **(JUDGE BAILEY)**


**UNITED STATES OF AMERICA,**
     **Respondent.**


**REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE
RECOMMENDING THAT THE DISTRICT COURT DENY PETITIONER'S MOTION
UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

## I.   INTRODUCTION

On October 5, 2012, Petitioner-Defendant John E. Hargrove ("Petitioner"), proceeding *pro se*, filed a Motion to Vacate Pursuant to 28 U.S.C. § 2255.  (Civil Action No. 3:12-cv-124 Doc. 1; Criminal Action No. 3:07-cr-58, Doc. 405.)  On October 5, 2012, Petitioner filed a Motion for Leave to Amend the § 2255 Motion to Vacate.  (Criminal Action No. 3:07-cr-58, Doc. 403.)  The undersigned granted that Motion on October 17, 2012.  (Doc. 409). In addition, on October 5, 2013, the Petitioner filed a Motion for Extension of Time (Doc. 403), which was also granted by the undersigned on October 17, 2012 and gave Petitioner until December 19, 2012 to submit his Amended § 2255 Motion.  (Doc. 409).  On December 14, 2012, Petitioner filed a Motion for Additional Time to File First Amended Petition (Doc. 412), which the undersigned granted on the same day of filing. *Id.*; (Doc. 414).  Therein, this Court ordered the Petitioner to file his Amended Motion on or before January 4, 2013.  (Doc. 414).  Petitioner filed his Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Amended Motion") on January 11, 2013.  (Doc. 416).

1

On January 31, 2013, the undersigned issued a *Hill v. Braxton* notice, apprising the Petitioner that the Court perceived that his Petition may be untimely, and that it would recommend dismissal pursuant thereto absent sufficient excuse. (Doc. 417). Petitioner responded on February 11, 2013, clarifying that his Petition for Writ of Certiorari to the Supreme Court of Appeals was denied on October 3, 2011, thus making the deadline for filing the § 2255 Motion October 3, 2012. (Doc. 419). Petitioner then attributed the two-day delay in filing of the original § 2255 Motion to the "backlog of mail movement" at the prison and "difficulties with receiving copies" from prison administrators. *Id.* On February 13, 2013, the Government filed a Clarification as to *Hill v. Braxton* Notice as to the matter of the timeliness of Petitioner's Amended Motion. (Doc. 420). Therein, the Government declined to contest the timeliness of Petitioner's Amended Motion, stating that it appeared timely as per the "mailbox rule." *Id.*[1]

On February 15, 2013, the undersigned Magistrate Judge entered an Order directing Respondent, the United States of America ("Respondent" or "Government") to answer Petitioner's Amended Motion. (Doc. 421). The Government filed a motion for Extension of Time on March 13, 2013 (Doc. 424), which the undersigned granted on March 14, 2013, therein setting the extended deadline for April 4, 2013. (Doc 425). The Government responded to Petitioner's Motion on April 3, 2013 ("Response"). (Doc. 429). Petitioner filed his Reply to the Government's Response to Petitioner's Amended Motion on June 10, 2013. (Doc. 439).[2]

---

[1] As to the original motion, the Government explained that the Petitioner "attested in his declaration...that he placed said petition in the mail on September 28, 2012" in advance of the October 3, 2012 deadline. *Id.*; (Doc. 420). Additionally, the Government noted that the Amended Motion was saved by the "mailbox rule" because Petitioner attested the Amended Motion was placed in the mail on the January 4, 2013 deadline. *Id.*

[2] The Petitioner filed a Motion for Extension of Time to File a Reply on April 15, 2013 (Doc. 432), which was granted on the same filing day (Doc. 433). The Petitioner filed a second

The undersigned now issues this Report and Recommendation on Petitioner's Amended

Motion without an evidentiary hearing. For the reasons stated below, the undersigned

recommends that the District Judge deny Petitioner's Amended Motion.

## II.   FACTS

### A. Conviction and Sentence

On July 17, 2007, a federal grand jury indicted the Petitioner on three counts. (Doc. 1).

Count One (1) charged the Petitioner with Attempted Transfer of Obscenity to a Minor, in violation

of Title 18, United States Code, Section 1470. (*Id.* at 1). Count Two (2) charged Petitioner with

Transportation of Child Pornography in violation of Title 18, United States Code, Section

2252A(a)(1). (*Id.* at 2). Count Three (3) charged Petitioner with Attempted Enticement of a Minor,

in violation of Title 18, United States Code, Section 2422(b). (*Id.* at 3).

On December 21, 2007, the Petitioner signed a binding, global plea agreement in which he

agreed to plead guilty to Count Three (3) of the Indictment, Attempted Enticement of a Minor, in

violation of Title 18, United States Code, Section 2422(b). (Doc. 48 at 1). The parties agreed that

the sentence imposed would be imprisonment for a period of 240 months or twenty (20) years

followed by lifetime supervised release. (*Id.* at 3). Also pursuant to the agreement, the United States

agreed to dismiss Counts One (1) and Two (2) of the Indictment at sentencing and the United States

Attorney's Offices for the Middle District of Pennsylvania and the District of Connecticut agreed

not to prosecute the defendant in their Districts for crimes related to the instant offense. (*Id.*).

Accordingly, the Petitioner entered a plea of guilty to Count Three (3) in open court on January 7,

---

Motion for Extension of Time to File a Reply on May 20, 2013. (Doc. 436). The extension was
granted on May 23, 2013 and gave the Petitioner until June 30, 2013 to file the Reply. (Doc
437).

2008. (Doc. 50). Throughout these initial proceedings, the Petitioner was represented by Brian Crockett, Esq. (Doc. 11) and Brendan Leary, Esq. of the Federal Public Defender's Office (Doc. 35).

On April 1, 2008, in lieu of the originally scheduled sentencing hearing, Judge Bailey held a status conference. (Doc. 58). During the hearing, Petitioner orally moved to withdraw his plea of guilty and have his defense attorney, Brian Crockett, withdraw as counsel. (Doc. 58); (Doc. 317). Judge Bailey granted the oral motions, set the trial date for May 21, 2008 and ordered the Federal Public Defender's office to appoint new counsel. (Doc. 59).[3] On April 9, 2008, the Court appointed Robert Barrat, Esq. to represent Petitioner. (Doc. 62).

Leading up to the trial date, Petitioner frequently wavered as to whether he would like to be represented by counsel or proceed *pro se*.[4] On the morning of the first day of trial on October 1, 2008,[5] Petitioner announced that he would like to be represented by counsel. (Doc. 262). The Court ruled that Mr. Barrat, then serving as stand-by counsel, would serve as counsel throughout the remainder of the trial. (Doc. 262 at 4-5).

---

[3] During the conference, Judge Bailey explained he permitted the Petitioner to withdraw his plea of guilty due to his concern that the plea agreement did not set forth a "sufficient level of punishment" given the gravity of the information contained in the pre-sentence investigation report. (Doc. 317 at 4).

[4] Prior to the trial date, Petitioner filed various motions seeking to appoint himself as co-counsel (Doc. 60), to act as counsel (Doc. 104) and for self-representation (Doc. 109); he also filed a number of *pro se* motions and letters. Petitioner's appointed counsel, Mr. Robert Barrat, filed a Response to Defendant's Pro-Se Motions and agreed to serve as standby counsel and assist Petitioner in preparation for trial. (Doc. 118). On August 15, 2008, the Court granted Petitioner's motion for self-representation (Doc. 109) with Mr. Barrat serving as standby counsel. (Doc. 121).

[5] The Court granted Petitioner's Motion to Continue Trial Date on April 29, 2008 and set the trial date for July 15, 2008. (Doc. 69). The Court granted Petitioner's Second Motion to Continue Trial Date on July 2, 2008. (Doc 91). At the July 7, 2008 status hearing, the trial date was set for September 30, 2008. (Doc. 94). The trial date was then reset for October 1, 2008. (Doc 232).

On October 3, 2008, after a three day trial, the jury returned guilty verdicts on all three counts of the Indictment. (Doc. 252). At a sentencing hearing on December 12, 2008, Judge Bailey sentenced the Petitioner to a term of 120 months imprisonment to run concurrent with Counts Two (2) and (3), followed by a three year term of supervised release on Count One (1); to a term of 240 months concurrent with Counts One (1) and Three (3), followed by lifetime supervised release on Count Two (2); and to a term of life in prison to run concurrent with Counts One (1) and Two (2), followed by lifetime supervised release on Count 3. (Doc. 294).

## B. Direct Appeal

Petitioner pursued a direct appeal to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"), in which Petitioner was represented by Tracy Weese, Esq. On appeal, Petitioner asserted that (1) the District Court should have suppressed statements made to law enforcement because "at the time he made them he was subject to a custodial interrogation and had not been informed of his rights under *Miranda,*" and (2) that "his sentence is substantively unreasonable because the District Court erred by considering that Hargrove exercised his right to a jury trial as a basis for the sentence imposed." *United States v. Hargrove*, 625 F.3d 170, 172 (4th Cir. 2010). The Fourth Circuit affirmed Petitioner's conviction, and held that the court "did not err in denying Hargrove's motion to suppress" and "did not commit plain error during sentencing." *Id.* at 185. Petitioner filed a petition for writ of certiorari in the Supreme Court of the United States, which was denied on October 3, 2011. *See Hargrove v. United States*, 132 S.Ct. 292, 181 L.Ed.2d 177, 80 USLW 3189 (Oct. 3, 2011).

## C. Federal Habeas Corpus

### 1. Petitioner's Amended Motion

In his Amended Motion, Petitioner alleges the following:

1. New evidence obtained through a Freedom of Information Act ("FOIA") request tends to show that:

    (a) the government presented evidence at trial which was illegally obtained from a Hewlett-Packard Pavilion computer that was seized from Petitioner's residence; and

    (b) FBI Agents perjured themselves at a suppression hearing when they testified that the Hewlett-Packard Pavilion computer taken from Petitioner's residence was not searched.

2. Defense Counsel was constitutionally ineffective for the following during trial:

    (a) making statements to the defense computer expert, Mr. Gurvinder Bindra, which the petitioner perceived as "disloyal;"

    (b) failure to follow the defense strategy which Petitioner had prepared, and which the Court allegedly directed Mr. Barrat to follow;

    (c) failure to call particular witnesses which Petitioner believed should have been called;

    (d) failure to request *Brady* materials, and failing to investigate several avenues of defense suggested by Petitioner;

    (e) failure to argue that Petitioner made no substantial step toward the actual commission of the offense of Enticing a Minor, as per the instructions on "Attempt;"

    (f) failure to challenge defects in the text and execution of the search warrant for Petitioner's residence;

    (g) failure to raise a search warrant issue as to the fact that no child pornography was recovered from Petitioner's computers; and

    (h) failure to object to the application of U.S.S.G. § 2G2.1's sentence enhancement for production of child pornography, which Petitioner alleges had not been established as an element of criminal behavior during the trial.

3. Two illegal searches were conducted during the government's investigation of Petitioner:

    (a) the initial search of Petitioner's residence, because FBI Agents did not have a copy of the search warrant on their person when they entered Petitioner's residence, did not leave a copy of the search warrant at the searched premises, and the warrant itself featured the incorrect date for execution; and

    (b) the warrantless protective sweep of the building which FBI Agents performed,

because it covered communal areas of the house which were used by several tenants, thereby violating their rights.

4. The Assistant U.S. Attorneys involved in the case committed prosecutorial misconduct by presenting evidence at trial which they knew to have been obtained through an unlawful search.

(Doc. 416)

## 2. Government's Response

In its response, the Government asserts as follows:

1. With regard to Ground 1, the Petitioner's claim fails because the computer in question was not illegally seized. It was obtained by consent. This claim also fails because the computer in question was never searched. Finally, the Petitioner's claim in Ground 1 fails because the Petitioner has not identified any newly discovered material evidence.

2. With regard to Ground 2, the government asserts that trial counsel was not constitutionally ineffective for the following reasons:

(a) Any comments that trial counsel may have made to Mr. Bindra were in the context of a private conversation, and the Petitioner has not alleged that these comments affected Mr. Bindra's testimony in any way. Additionally, even assuming that counsel did in fact harbor ill feelings toward the Petitioner, it does not follow that counsel rendered deficient performance as a result;

(b) The fact that counsel does not do something the Petitioner wanted him to do does not, in and of itself, establish deficient performance. Additionally, the Court neither instructed counsel to follow any particular defense, nor approved any particular defense. The Petitioner has also failed to indicate what defense he believes counsel should have pursued, or that it would have resulted in a different outcome at trial;

(c) The decision of whether or not to call a particular witness is a tactical decision which typically does not trigger an ineffective assistance of counsel claim. Additionally, counsel was not appointed until the first day of trial because the Petitioner insisted on representing himself up to that point. Mr. Barret would have overstepped his duties as standby counsel if he would have arranged for the appearance and interview of these witnesses. Moreover, Petitioner has not shown that calling the witnesses would have changed the outcome of the trial;

(d) There is no factual basis for any of the avenues of investigation which Petitioner claims counsel should have pursued.

(e) Trial counsel did in fact argue that there was no 'substantial step' towards the

7

commission of the Enticement of a Minor offense and cross-examined Deputy Frame on this very issue;

(f) Trial counsel did in fact raise and cross-examine Agent Chance as to the validity of the search warrant authorizing the search of Petitioner's home on January 5, 2007 at the Motion to Suppress Hearing held on June 10, 2008;

(g) Failure to raise a suppression issue relating to the fact that child pornography was not found on Petitioner's computers is irrelevant to this case, as none of the charges against Petitioner required the state to prove that he possessed child pornography. Additionally, a search warrant is not defective simply because it does not give rise to evidence. Even if that were the case, Petitioner's assertion that no evidence was recovered from his computers is incorrect;

(h) Trial counsel did in fact raise an objection to the application of U.S.S.G. § 2G2.1's sentence enhancement for production of child pornography. Moreover, the cross-reference to the Production of Child Pornography Guidelines was established by credible evidence.

3. With regard to Ground 3, the Petitioner's claims are without merit because:

(a) The validity of the change to the search warrant date was dealt with at a Motion to Suppress hearing, apparently to the satisfaction of all parties;

(b) The alleged search of the common areas was also addressed at the Motion to Suppress hearing. Petitioner had no expectation of privacy in common areas of the apartment building, and additionally lacks standing to assert a claim for alleged violations of his neighbors' Fourth Amendment rights;

(c) Petitioner procedurally defaulted on raising the alleged procedural and substantive Fourth Amendment claims, which should have been raised on direct appeal, not through a § 2255 challenge; and

(d) The "storage devices" which Petitioner claims were subsequently searched were in fact never searched. In the event they had been searched, Petitioner has failed to offer any facts demonstrating a connection between this alleged search and his conviction which occurred years earlier.

4. With regard to Ground 4, the Petitioner's claims are predicated on wild and baseless speculation, with no facts offered in support of his assertions of prosecutorial misconduct.

(Doc. 429).

## 4. Petitioner's Reply

In his Reply, Petitioner first stipulates that the Government's Summary of Petitioner's Claim, Statement of Factual Background and Procedural History is correct with the exception to the Government describing Petitioner's interactions as being with "several" girls.[6] (Doc. 439 at 1). Petitioner then reiterates two of the arguments raised in his Amended Motion, specifically his claims of newly discovered evidence and that his attorney rendered ineffective assistance of counsel.[7] (*Id.* at 2-8). Petitioner also challenges his sentencing enhancement based on the production of child pornographic images, which he explains were produced by S.M prior to her meeting the Petitioner. (*Id.* at 8). Lastly, Petitioner states that Ms. Tracy Weese, Esq., his appointed appellate counsel, requested to be removed as counsel due to a conflict in representation. (*Id.* at 8).

### 5. Petitioner's Additional Filings

The Court received several additional filings from the Petitioner attempting to supplement his Reply to the government's Response after the fact. (Doc. 441, 443). These filings were received well after the deadline for Petitioner's Reply, and will not be considered by the Court.

### D. Recommendation

Based upon a review of the record, the undersigned recommends that Petitioner's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal

---

[6] Petitioner explains in the Reply that "(t)hree girls, two of which were undercover agents, does not constitute 'several.'" (Doc. 439 at 1).

[7] As to the newly discovered evidence claim, Petitioner directs the Court's attention to the Reply's attached exhibits and asserts that the H.P. Pavilion computer was illegally searched based on the description and tracking of the computer while in the government's custody. (*Id.* at 2-6). Second, Petitioner reasserts the ineffective assistance arguments claiming Mr. Barrat was biased towards him, which is reflected by the fact that Mr. Barrat did not inform Petitioner that the Government "placed the binding plea bargain back on the table" the morning of the trial. (*Id.* at 7). Petitioner again raises concerns with Mr. Barrat's alleged conversation with the defense computer expert, Mr. Gurvinder Bindra, and explains that Mr. Bindra expressed concern to Petitioner regarding Mr. Barrat's representation. (*Id.* at 7-8).

Custody (Civil Action No. 3:12cv124, Doc. 1; Criminal Action No. 3:07-cr-58, Doc. 405) be denied and dismissed because it is both substantively and procedurally deficient. In Ground 1, Petitioner has failed to identify any material newly discovered evidence. In Ground 2, Petitioner has failed to meet the two prongs of *Strickland* to demonstrate any claims of ineffective assistance of counsel. Finally, in Ground 3 and 4, Petitioner has procedurally defaulted on these claims through failure to raise them on direct appeal.

### III. Analysis

#### A. The Petitioner's Habeas Corpus Petition was Timely Filed

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year limitation period within which a petitioner may file any federal habeas corpus petition. 28 U.S.C. 2255. That statute of limitation begins to run on the latest date among the following:

> 1. The date on which the judgment of conviction becomes final;
>
> 2. The date on which the impediment to making a motion created by governmental action in violation of the Constitution or the laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> 3. The date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> 4. The date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

The Petitioner appealed his conviction and sentence to the Fourth Circuit. He lost this appeal. *See United States v. Hargrove*, 625 F.3d 170 (4th Cir. 2010). The Petitioner sought a writ of certiorari from the Supreme Court of the United States, which was denied on October 3, 2011. *See United States v. Hargrove*, 132 S. Ct. 292 (2011). Therefore, the filing deadline for

Petitioner's post-conviction habeas corpus petition was October 3, 2012. *See United States v. Segers*, 271 F.3d 181, 186 (4th Cir. 2001). The Petitioner filed his § 2255 petition on October 5, 2012, two days past the filing deadline. (Doc. 405). Additionally, Petitioner filed his Amended Petition on January 11, 2013, seven days past his extended filing deadline. (Doc. 416).

In the instant case, by concession of the government, it appears that Petitioner's § 2255 Petition is timely as per the "mailbox rule."[8] F.R.H.C. 3(d); 28 U.S.C. § 1746. In his declaration, the Petitioner attests that he placed the Petition into the prison mail system on September 28, 2012. Petitioner also attests that he placed his Amended Motion in the mail on January 4, 2013. In both these instances, Petitioner attested that his filings were placed in his penitentiary's legal mail system prior to the running of the statute of limitation. F.R.H.C. 3(d). Thus, it appears to the Court that both the Petition and Amended Petition were timely filed.

**B. Petitioner's Newly Discovered Evidence Claim is Without Merit**

In his Amended Motion, Petitioner claims that, through a FOIA request, he discovered new evidence which tends to show that the Government presented evidence at trial that was illegally obtained from a Hewlett-Packard Pavilion computer unlawfully seized from the Petitioner's residence. (Doc 416-1 at 3). Petitioner further claims that FBI Agents gave perjured testimony at the Motion to Suppress hearing when they testified that the aforementioned computer was not searched. (*Id.*) Petitioner claims this knowledge comes from a visit in jail by Agent Floznec, in which Agent Floznec showed Petitioner some evidence stored on a compact

---

[8]**(d) Inmate Filing.** A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

disk. (*Id.*) Petitioner believes there is no other way the government could have obtained that particular evidence than from the Hewlett-Packard Pavilion computer, thus proving his allegations. (*Id.* at 3-4).

Petitioner's claim is without merit for a number of reasons. First, Petitioner's claim fails because he has not in fact shown any newly discovered evidence. Second, the seizure of the Hewlett-Packard Pavilion computer in question was not unlawful. Third, the Petitioner has failed to show that the aforementioned computer was in fact ever searched.

### 1. Petitioner has failed to present any newly discovered evidence.

In his Amended Motion and Reply, Petitioner claims that newly discovered evidence was uncovered in February 2012 after he received documents relating to his criminal case following a F.O.I.A. request. (Doc. 416-1 at 4). According to Petitioner, this new evidence demonstrates that his Hewlett-Packard Pavilion computer was illegally searched and that federal agents testified falsely at the Motion to Suppress hearing regarding the search and the physical location of the computer while in government custody. (Doc. 416; Doc. 439). The Government argues that the alleged "new evidence" is not material and "consists of nothing more than his summary conclusions which have been drawn through flawed logic, inspired by paranoid ideations, and based on unfounded assumptions about perceived anomalies." (Doc. 429 at 9-10). Additionally, the Government asserts that such "new evidence" fails to show a violation of Petitioner's constitutional rights occurred. (*Id.* at 10). The Court finds that Petitioner's claim fails because the evidence fails to establish grounds for vacating petitioner's conviction.

In his Amended Motion, Petitioner alleges the new evidence includes a photo copy of a CD that contains information unlawfully seized from Petitioner's Hewlett-Packard Pavilion computer. (*Id.* at 4; Doc. 416-3, Exhibit 2). Petitioner further alleges that Agent Floznec

showed Petitioner this CD while he was held at the Jail following his arrest on July 23, 2007. (*Id.*). Petitioner argues that the existence of the photocopy of the CD establishes that federal agents unlawfully searched the computer and then testified falsely during the Motion to Suppress hearing when they stated that information was not seized from the computer. (Doc. 416-1 at 6). Petitioner raises this same argument in his Reply. (Doc. 439 at 4-5).

In the Petitioner's Reply, he points the Court to additional documentation when arguing that the Pavilion computer was removed from the state of Connecticut and unlawfully searched; he further argues that these actions thereby indicate that federal agents testified falsely regarding the location and unlawful search of the computer during the Motion to Suppress hearing. (Doc. 439). Petitioner alleges that the new evidence shows that the Pavilion computer was "sent to CART" for analysis (Doc. 439 at 2; Ex. 3, Doc. 439-4) and that the computer was assigned an evidence number "which is clear evidence that the Pavilion was, in fact, searched, copied, and the information was used at trial" (Doc. 439 at 4; Ex. 1, Doc. 439-2).

Petitioner further argues that the new evidence proves that federal agents provided false testimony during the Motion to Suppress hearing by claiming the Pavilion computer never left the state of Connecticut. (Doc. 439). To support this claim, Petitioner points to Exhibit 5 because the document lists "Innocent Images Pittsburgh" under the "Title and Character of Case" field of the document. (Doc. 439 at 5; Ex. 5, Doc. 439-6). Petitioner alleges Exhibit 6, the FBI's Chain of Custody form, shows that the computer was "released" on September 17, 2007 for return to the Petitioner's custody and that based on Exhibit 4, the computer was not "received" by the New Haven F.B.I. field office until October 23, 2007. (Doc. 439 at 5-6; Ex. 6, Doc. 439-7; Ex. 4, Doc 439-5). Based on this alleged new evidence, Petitioner concludes that the computer "was in the costody (sic) of the Ct., FBI, and was then obviously sent to Pittsburgh,

13

PA for further CART analysis." (Doc. 439 at 6).

The Court finds Petitioner's argument is without merit. First, the exhibits attached to Petitioner's Reply indicate nothing more than that the Hewlett-Packard Pavilion computer was logged and tracked by the Government as an item of evidence. Second, these entries do not definitively establish that the Pavilion computer was in fact unlawfully searched or analyzed, only that it was given a file number and tracked by the Government when the computer was in their possession. Third, the documents do not establish that federal agents fabricated their testimony. Even if the documents could be construed as proving that the computer was sent out of state and that the agent's fabricated their testimony as to the location of the computer while in F.B.I custody, petitioner has failed to establish the required grounds for vacating petitioner's conviction.

In this Circuit, the Court utilizes a five-part test based on Rule 33 of the Federal Rules of Criminal Procedure to determine whether a new trial should be granted based on newly discovered evidence. Under this test, the Court must find: (1) the evidence is in fact newly discovered, i.e., discovered since trial; (2) diligence on the part of the movant may be inferred from the facts alleged; (3) the evidence relied on is not merely cumulative or impeaching; (4) the evidence relied on is material to the issues involved; and (5) the evidence relied on is of such a nature that on a new trial, the newly discovered evidence would probably produce an acquittal. See United States v. Robinson, 627 F.3d 941, 957 (4th Cir. 2010); United States v. Fulcher, 250 F.3d 244 (4th Cir. 2001) (citing United States v. Curtis, 988 F.2d 1355, 1359 (4th Cir. 1989)). This test is applied to evidence claimed to be newly discovered when put forth to support a claim of innocence or to show that a jury was subjected to improper influence. Holmes v. United States, 284 F.2d 716, 719 (4th Cir. 1960). Petitioner has failed to prove the above elements.

First, Petitioner has failed to prove the documents are in fact material to the issue of whether the computer was in fact illegal searched. Even though the computer was in the government's custody and labelled as an item of evidence, the documents do not indicate that an illegal analysis or search occurred. Second, Petitioner has failed to show that his rights were violated by an illegal search of the computer or that the agent's lied when providing testimony as to "probably produce an acquittal." The documents regarding the computer's location would merely have impeached the federal agent's ability to accurately recall the exact location of the computer while in government custody rather than produce an acquittal. Therefore, Petitioner has failed to prove all five elements as required to justify a new trial based on newly discovered evidence and has failed to establish the required grounds for vacating petitioner's conviction.

## 2. The seizure of the Hewlett-Packard Pavilion computer was lawful.

Petitioner claims that the warrantless seizure of the Hewlett-Packard Pavilion computer from his residence on the date of his arrest was unlawful. As discussed below, the Court rejects Petitioner's argument.

While the Fourth Amendment protects against unlawful searches and seizures, not all searches or seizures are unlawful. If the subject of a search or seizure gives their consent, a warrant becomes unnecessary. *See United States v. Corbitt*, 675 F.2d 626, 629 (4th Cir. 1982). In the instant case, the arresting agents asked the Petitioner immediately upon discovering that he possessed a computer, if he would allow them to take and search it. (Doc. 125 at 32, : 12-25). The Petitioner then gave his consent for them to do so, and admitted as much on cross at the Motion to Suppress Hearing on June 10, 2008. (*Id.* at 82:1-4). While the Petitioner later revoked his consent and requested the return of the seized computer (Doc. 9), a revocation of consent is not a retroactive denial of consent. Petitioner has presented no evidence that would tend to show

that the seizure of the Hewlett-Packard Pavilion computer was unlawful.

### 3. The Petitioner has failed to show that Hewlett-Packard Pavilion computer was ever searched.

Petitioner's claim relies on seven pages of documentation which he claims he acquired as the result of a FOIA request. (Amended Motion, Doc. 416-1 at 4; Petitioner's Reply, Doc. 439-1-11). Specifically, Petitioner claims that the page marked Exhibit 2, which depicts a photocopy of a compact disk with "Obscene Material," as well as other markings on it, is the same disk which Agent Floznec allegedly brought to show him at the Jail, which he claimed contained images and other information which could have only been obtained from the Pavilion computer. (*Id.*).

This aspect of Petitioner's claim is equally unsubstantiated. First, Petitioner fails to state what information or images were on the disk allegedly shown to him at the jail he recognized as coming from the Pavilion computer. Additionally, none of the attached exhibits which Petitioner claims prove his allegations show any evidence of that computer being searched. The only information regarding the computer in question shows that it was received by the New Haven F.B.I. office on July 30, 2007 (Doc. 416-7), and subsequently returned to Petitioner upon his request on September 17, 2007 (Doc. 416-6; Doc. 416-7).

Petitioner also admitted at the June 10, 2008 hearing that he was unsure from where many of the chat logs and images were recovered. (Mtns. Hrg. Tr., Doc. 125 at 83:23-25). Petitioner's answer when asked how he knew that computer had been searched was simply "Some of the chat logs that are out there." (*Id.* at 83:17). When pressed by the Assistant U.S. Attorney as to why he thought some of the chats conversations were taken from that computer specifically, Petitioner further admitted that he did not know whether any of the evidence disclosed by the government in discovery was actually recovered from that computer.

| 23 | Q: Okay.  You believe that some of those chats were on your |
| 24 | computer? |
| 25 | A: I don't know if they were specifically on that one or not, no. |
| 1 | Q: Okay.  So that's your - your whole basis for claiming that |
| 2 | something improper happened? |
| 3 | A: I - it appears to me. |
| 4 | Q: Why would you think that it would be on that computer as |
| 5 | opposed to – |
| 6 | A:  I never made a statement that I thought that it would be |
| 7 | specifically on that computer. |

(Mtn. Tr., Doc. 125 at 83:23-25, 84:1-7).

Based on the foregoing, the undersigned finds no merit in Petitioner's claim that his Fourth Amendment rights were violated by an illegal search of the Pavilion computer. Therefore, the undersigned recommends this claim be dismissed.

### C. Petitioner's Claims of Ineffective Assistance of Counsel are Without Merit

#### 1. Standard Governing Ineffective Assistance of Counsel

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  First, "the defendant must show that counsel's performance was deficient."  *Id.*  Second, "the defendant must show that the deficient performance prejudiced the defense."  *Id.*  These two prongs are commonly referred to as the "performance" and "prejudice" prongs.  *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.  However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the

wide range of reasonable professional assistance." *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" *Hunt v. Lee*, 291 F.3d 284, 289 (4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. *See Strickland*, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. *See id.* at 691. The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." *Fields,* 956 F.2d at 1297.

The Fourth Circuit has set forth two categories of decisions made by trial counsel when analyzing ineffective assistance of counsel claims. First, there are "personal" decisions that require the defendant's consent, such as the decision to enter a guilty plea, the decision to waive a trial by jury, the decision to appeal, and the decision of whether to testify at trial. *Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998) (citations omitted). The second category includes decisions that "'primarily involve trial strategy and tactics,' such as 'what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." *Id.* (quoting *United States v. Teague*, 953 F.2d 1525, 1531 (11th Cir. 1992)). Accordingly, "(t)here is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington v. Richter*, 131 S. Ct. 770, 790 (2011) (citations omitted) (internal quotation marks omitted).

### 2. Analysis of Petitioner's Ineffective Assistance of Counsel Claims

**(a) Petitioner's claim that trial counsel was constitutionally ineffective for allegedly making statements perceived by Petitioner as "disloyal" is without merit.**

In his Motion, Petitioner claims that trial counsel, Robert Barrat, Esq., rendered constitutionally ineffective representation by allegedly making statements to defense expert witness Gurvinder Bindra which Petitioner perceived as disloyal. (Amd. Mot., Doc. 416-1 at 7). Specifically, Petitioner claims that Mr. Bindra informed him that Mr. Barrat had said that "(Mr. Hargrove) is guilty as can be," "(Mr. Hargrove) belongs in prison," and "(Mr. Barrat) hate(s) sex offenders." *Id.* The Petitioner believes this is evidence that trial counsel "intended to deliberately sabotage Mr. Hargrove's defense..." *Id.*

*Strickland*'s "performance" prong is satisfied only through a showing by Petitioner that trial counsel took an action which was professionally unreasonable. *Strickland,* 466 U.S. at 687. This standard takes into account the representation actually rendered in service to Petitioner. *See id.* at 687-688. Therefore, a claim that an attorney held a particular personal belief about the likely success of a client's case, or personal opinion of the client himself, is largely irrelevant as to trial counsel's effectiveness. *See id.* at 699 (noting that "nothing in the record indicates... that counsel's sense of hopelessness distorted his professional judgment."). Petitioner must show that these alleged beliefs manifested themselves in professionally unreasonable action in the actual representation of his client, and overcome the strong presumption that, in spite of any personal misgivings, counsel "made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

It should first be noted that Petitioner has provided no corroboration to indicate that these alleged remarks were ever made. Mr. Bindra has not provided a statement, leaving Petitioner with no support for his story aside from his own assertions of Mr. Bindra's out-of-court

statements.  However, even if Petitioner could show that Mr. Barrat in fact made these statements, he must still meet *Strickland*'s prejudice prong through a showing that the outcome of the proceeding would have been different absent counsel's alleged unprofessional acts.  *Id.* at 687.  Petitioner has identified only one person other than himself and his attorney, who allegedly heard the asserted statements, Mr. Bindra.  He has, however, failed to allege that Mr. Bindra's expert testimony was altered, or that any other aspect of his trial was so affected, by Mr. Barrat's alleged statements to Mr. Bindra.

For the foregoing reasons, the undersigned finds that Petitioner has failed to meet his burden of demonstrating that his counsel was constitutionally ineffective for allegedly making statements perceived by Petitioner as disloyal.  Therefore, the undersigned recommends that this claim be dismissed.

### (b) Petitioner's claim that trial counsel was constitutionally ineffective for refusal to follow Petitioner's theory of the case is without merit.

In his Amended Motion, Petitioner claims that trial counsel failed to provide constitutionally effective representation by failing to follow Petitioner's theory of the case. (Doc. 416-1 at 7).  Petitioner additionally claims that the Court ordered Mr. Barrat to follow Petitioner's theory.  *Id.*  Specifically, Petitioner asserts that Mr. Barrat's refusal to pursue the "avenues of defense" and "line of questioning" prepared by the Petitioner constituted evidence of "deliberate sabotage" of Petitioner's defense.  *Id.*

Petitioner's claim that counsel was ineffective for failure to pursue a particular defense strategy is without merit.  A decision regarding what defense strategy to pursue is an example of a tactical decision, for which greater deference is given to trial counsel's skill and experience. *See Sexton* 163 F.3d at 885; *see also Teague,* 953 F.2d at 1531**.**

Additionally, the inquiry into trial counsel's performance must be as to whether "counsel's performance was reasonable *considering all the circumstances*." *Strickland,* 466 U.S. at 688 (emphasis supplied). The most prominent circumstance affecting Petitioner's trial was Petitioner's own self-representation for most pre-trial stages. Any aspect of trial affected by Mr. Barrat's level of preparedness can be directly attributed to the fact that, due to Petitioner's indecisiveness as to whether he wanted to be represented, Mr. Barrat was not permanently appointed as Petitioner's counsel until the morning of the first day of trial, immediately before opening statements. This delay in appointing representation was not due to any error on the part of the Court or of Mr. Barrat, but solely because Petitioner chose to fire his initial counsel and proceed pro se, and did not permanently request new counsel be appointed until that point. As the Court stated at trial, "any prejudice was brought on (Petitioner) by himself..." (Doc. 271 at 4).

Even if this decision constituted a professionally unreasonable error, it would not "warrant setting aside a criminal proceeding if the error had no effect on the judgment." *United States v. Morrison*, 449 U.S. 361, 364-65 (1981). Petitioner must also show that had trial counsel pursued the aforementioned defense prepared by the Petitioner, there is a "reasonable probability that...the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. In this instance, Petitioner must show that, had counsel followed Petitioner's theory of the case, the outcome of the trial would have resulted in a different outcome. *See id.* Petitioner has failed to offer any facts which would tend to support such a conclusion.

For the foregoing reasons, the undersigned finds that Petitioner has failed to meet his burden of demonstrating that his counsel was constitutionally ineffective for failure to follow a particular trial strategy devised by Petitioner. Therefore, the undersigned recommends that this

claim be dismissed.

### (c) Petitioner's claim that trial counsel was constitutionally ineffective for failure to call witnesses suggested by Petitioner is without merit.

In his Amended Motion, Petitioner claims that trial counsel rendered constitutionally ineffective assistance by failing to call several witnesses who Petitioner believes should have been called. Petitioner alleges that he assembled a witness list including his girlfriend, Jessica Cummings, Mark Lovejoy, and Michelle Lovejoy, and that trial counsel refused to call these witnesses with deliberate intent to sabotage Petitioner's defense. (Doc. 216-1 at 8).

First, Mr. Hargrove acted as his own counsel for several months leading up to the trial. Mr. Barrat was not appointed as Mr. Hargrove's trial counsel until the first day of the trial, just prior to opening statements. Prior to Petitioner's assertion that he would like to be represented by counsel during this proceeding, Mr. Barrat's role was that of standby counsel. During Petitioner's period of self-representation, Petitioner failed to arrange for the appearance or transport of these witnesses. Throughout this time, it was Petitioner's duty to arrange for the attendance of witnesses at trial and he failed to do so.

Because Mr. Barrat was acting as standby counsel during the time period when Petitioner should have arranged for the appearance of his desired witnesses, any error committed by trial counsel regarding these witnesses' unavailability would have to be framed as ineffective assistance of standby counsel. However, it is unlikely that such a claim even exists, as Petitioner waived his right to counsel during his period of self-representation. *See Gripper v. United States*, 2008 WL 270304, *4 (W.D.N.C. July 3, 2008) (stating that "whether Petitioner can even assert an ineffective assistance of counsel claim against standby counsel is suspect"); *see also Faretta v. California*, 422 U.S. 806, 836 (1975). While the Fourth Circuit has produced no

22

precedent binding on this Court as to this issue, several courts nationwide have come to the same conclusion as the *Gripper* court, refusing to recognize a Petitioner's claim of a right to effective standby counsel.[9]  Thus, having no recognized duty to ensure the Petitioner's desired witnesses could be called at trial, trial counsel committed no error by failing to call these witness once he was appointed as trial counsel.

Second, even if the unavailability of these witnesses at trial is attributable to Mr. Barrat as standby counsel or trial counsel, there is no indication that such a decision to not call the witnesses was unreasonable as to rise to the level of ineffective assistance.  The Fourth Circuit has found that "(a)bsent a showing that the tactical decision of counsel was so unreasonable in light of the need for the testimony that it amounted to a deprivation of an attorney who acted within 'the range of competence demanded of attorneys in criminal cases,' we are reluctant to second guess the tactics of trial lawyers." *Goodson v. United States*, 564 F.2d 1071, 1072 (4th Cir. 1977) (*citing McMann v. Richardson*, 397 U.S. 759 (1970)).  Here, assuming the witnesses could be located and attendance procured for the dates of the trial, Mr. Barrat would have been put in the position of deciding whether to take testimony from several witnesses that he had not had the opportunity to interview prior to trial.  Trial counsel should be granted deference regarding the decision on whether to call these witnesses to the stand.

---

[9](T)here is "no constitutional right to hybrid representation," where the defendant "share(s) the duties of conducting (his) defense with a lawyer." *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997) (citing *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984)). "Without a constitutional right to standby counsel, a defendant generally cannot prove standby counsel was ineffective." *United States v. Cochrane,* 985 F.2d 1027, 1029 n.1 (9th Cir. 1993) (rejecting ineffective assistance of standby counsel argument in this context without foreclosing argument in future); *United States v. Windsor*, 981 F.2d 943, 947 (7th Cir. 1992) ("court knows of no constitutional right to effective assistance of standby counsel"); *United States v. Morrison*, 153 F.3d 34, 55 (2d Cir. 1998) ("without a constitutional right to standby counsel, a defendant is not entitled to relief for ineffectiveness of standby counsel") (citing *Schmidt*, supra).

For the foregoing reasons, the undersigned finds no error on the part of trial counsel in declining to call witnesses suggested by the Petitioner. Therefore, the undersigned recommends that this claim be dismissed.

**(d) Petitioner's claim that trial counsel was constitutionally ineffective for failure to investigate is without merit.**

In his Amended Motion, Petitioner claims that trial counsel was constitutionally ineffective for failure to investigate certain alleged avenues of defense. Petitioner asserts that this alleged failure to investigate extends to certain *Brady* materials, of which Petitioner claims Mr. Barrat was aware. (Amd. Mot., Doc. 416-1 at 8).

> "(S)trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."

*Strickland,* 466 U.S. at 690-91.

In support of his assertion that trial counsel's alleged failure to investigate constituted professionally unreasonable omissions, Petitioner alleges the following:

**I. Tainted evidence from the Hewlett-Packard Pavilion computer seized from Petitioner's residence.**

As addressed in Section III-B of this Report and Recommendation, Petitioner has presented no set of facts that would indicate that any evidence, tainted or otherwise, was obtained from the Hewlett-Packard Pavilion computer, or that it was ever searched.

**ii. Altered or omitted evidence from the undercover Deputy's computer.**

There is no mention on the record, apart from this bare, unsupported assertion, that any

evidence recovered from Deputy Frame's computer was in any way altered or omitted.

However, it is nonetheless false to say that trial counsel did not pursue this line of investigation.

During trial Counsel's direct examination of the defense computer expert, Gurvinder Bindra, Mr.

Barrat elicited testimony from that witness that, due to the method in which Deputy Frame

archived the chat logs from his discussions with Petitioner, there was a potential that they could

be altered.

> 17    Q: But in these records, it is all manually intervened
> 18    in?
> 19    A: Yes. I mean, since I think I brought to your
> 20    attention earlier also since there's chat logs over here
> 21    which have been cut and pasted, there's no way of
> 22    identifying that there has been no tampering of evidence.
> 23    Accidentally or intentionally.
> 24    Q: You're not saying that they have been tampered with.
> 25    Your position is that the way they were recorded?
> 1    A: Exactly. I mean, it is not in my capacity to say
> 2    that, yes, they have been tampered with. But I can
> 3    definitely see that the potential for tampering is
> 4    extremely immense.

(3rd day of Jury Trial Tr., Doc. 263 at 242:17-25, 243:1-4). After eliciting this testimony, trial

counsel followed up by arguing the potential for alteration of these chat logs during his closing

argument.

> 19    One other kind of a side issue. My expert came in and
> 20    said the way that the chats were cut and pasted, there is
> 21    no way–there is no way of identifying if there has been
> 22    any tampering...

(4th day of Jury Trial Tr., Doc. 264 at 32:19-22). The transcripts from Petitioner's trial clearly show that not only did trial counsel, through the expert witness Mr. Bindra, investigate the possibility of altered chat log data, he argued that line of defense before the jury. This assertion is wholly lacking in factual basis.

### iii. Alteration of chat logs.

Petitioner alleges that logs of chats between the Petitioner and Deputy Frame's online persona "Melissa" had been altered and mixed with chats between the Petitioner and Agent Southland's online persona "Hannah," which he claims could only have been recovered from the Pavilion computer (Amd. Mot. , Doc. 416-1 at 8, 17). As discussed above, Petitioner has still failed to present evidence that the Pavilion computer was ever searched. Considering today's modern computer technology, messages sent over the internet can be accessed by multiple computers. Even if Petitioner engaged in chat conversations using his Pavilion computer, those chats could still be accessed from other computers. Here, the chat logs with the purported minor "Hannah" were saved on the computer used by the Agent Southland. (3rd day of Jury Trial Tr., Doc. 263 at 18: 16-25).

As noted in the immediately preceding section, there is no evidence that any chat logs were ever altered. Furthermore, trial counsel both questioned the defense computer expert on this very issue (Jury, Trial Tr., Doc. 263 at 242: 17-25, 243:1-4) and addressed it in his closing argument. (Jury Trial Tr., Doc. 264 at 32:19-22). This claim is lacking in any factual support.

### iv. Attempt to report "Melissa" to the "proper authorities."

Petitioner claims that the entire time he was conversing with "Melissa," he was simply playing along in order to get help for what he believed to be a troubled child. (Amd. Mot., Doc.

416-1 at 16-17). Petitioner explains that he contacted "Melissa's" school and informed them that he suspected one of their students was "attempting to engage adult men on the Internet." (Doc. At 416-1 at 17). Petitioner has proffered no evidence of any occasion on which he made such an attempt, nor any testimony of any "proper authority" which he allegedly attempted to contact. There does not appear to be anything in this regard for trial counsel to have investigated.

### v. Culpability of third parties.

Petitioner claims that trial counsel should have investigated the possibility of implicating third parties for the offense of which Petitioner was convicted. This avenue of investigation would have been clearly futile. Petitioner himself admitted that he had been interacting online with "Melissa" and "Hannah." Additionally, during several chats with Deputy Frame, Petitioner utilized a webcam, making his face clearly visible to law enforcement officers, and frequently chatted under the self-referential screen-name "john_hargrove." The identity of the person chatting with Deputy Frame and Agent Southland's respective undercover personae was never in question. Trial counsel's decision not to pursue this avenue of investigation falls clearly within the realm of the professionally reasonable.

### vi. "Mis-association" of computer evidence.

Petitioner's factual allegations as to this claim are unclear to the Court. Petitioner has raised no set of facts which would lend merit or credibility to this assertion.

### vii. Incomplete forensic evidence.

Petitioner's factual allegations as to this issue are unclear to the Court. This claim is lacking in factual support.

### viii. Suppression of chat logs from "S.M.'s" computer

Petitioner claims that trial counsel should have investigated certain exculpatory evidence

on the computer belonging to "S.M.," which was suppressed by the government. (Amd. Mot., Doc. 416-1 at 16). However, no such chat logs were ever recovered from "S.M.'s" computer. In the lead-up to trial, the Petitioner's computer expert, Mr. Bindra, had the opportunity to examine "S.M.'s" computer hard drive. (Jury Trial Tr., Doc. 263 at 245:5-11). Had there been any chat logs saved on that computer, it can be assumed that Mr. Bindra would have found them, and brought them to Petitioner's attention. Additionally, Petitioner previously conceded that no such chat logs had been recovered.

```
3        THE DEFENDANT: Your Honor, I know that in your
4        recent judgments that you stated that you did not want me
5        to have a mirror image of the police hard drive.
6        Unfortunately, however, at this particular point in time,
7        in light of the fact that nothing has been able to be
8        pulled up on any of the computers that I had, examination
9        of Ms. S. M.'s hard drive didn't reveal any chat logs
10       whatsoever.
```

(Pretrial Conf. Tr., Doc. 259 at 17:3-10). Petitioner has shown no basis for why trial counsel should have pursued a line of investigation which had already been established as a dead end.

### ix. Failure to acquire *Brady* materials.

Petitioner asserts that trial counsel should have identified and investigated certain *Brady* materials. (Amd. Mot., Doc. 416-1 at 8). While Petitioner makes no claim as to what these alleged *Brady* materials might be, he does reference alleged tainted evidence recovered from the oft-mentioned Hewlett-Packard Pavilion computer. The Court will once note again that the Petitioner has failed to establish that the Pavilion computer was ever the subject of any search. This claim is entirely lacking in factual or legal support.

For the foregoing reasons, the undersigned finds that trial counsel committed no

unprofessional error by failing to investigate any of the Petitioner's suggested avenues of

defense. Therefore, the undersigned recommends that this claim be dismissed.

> **(e) Petitioner's claim that trial counsel was constitutionally ineffective for failure to argue that Petitioner had not made a 'substantial step' toward the commission of the crime is without merit.**

In his Amended Motion, Petitioner claims that trial counsel rendered ineffective

assistance through his alleged failure to argue that Petitioner made no 'substantial step' toward

the commission of the Enticement of a Minor offense, as was required by the given jury

instruction on Attempt. (Amd. Mot., Doc. 416-1 at 8).

An attorney is not *per se* ineffective merely because he failed to raise a particular

argument which would have been permissible under the circumstances. *See United States v.*

*Tart*, 877 F.2d 61, *2 (4th Cir. 1989). "Failure to raise a losing argument or pursue a futile

motion...does not constitute ineffective assistance." *Floyd v. United States*, Nos. 2008 WL

3925841, *5 (D.S.C. Aug. 26, 2008) (citing *Whitehead v. Cowan*, 263 F.3d 708 (7th Cir. 2001)).

Should Petitioner meet his burden of proving professionally unreasonable error by trial counsel,

he must also show that had the allegedly omitted argument been made, there is a "reasonable

probability that...the result of the proceeding would have been different." *Strickland,* 466 U.S. at

694; *see also Morrison*, 449 U.S. at 365 (holding that absent some impact on the outcome of the

criminal proceeding, there is no basis for imposing a remedy predicated on harmless error).

This claim is wholly unsubstantiated. Trial counsel did in fact cross-examine the

government's witness, Deputy Frame, as to whether Petitioner's interactions with the purported

minor "Melissa" constituted the type of "substantial step" required. (2nd day of Jury Trial Tr.,

Doc. 262 at 271-274).

6    MR. BARRAT:  That wasn't a substantial trip step to having her

7    transported to Connecticut?

8    DEPUTY FRAME:  It was a larger step than most predators make to gain

9    control of a child.

10    MR. BARRAT:  Well, still that was kind of separate from her going

11    to Connecticut herself though? That was just a signature

12    on a blank piece of paper?

13    DEPUTY FRAME:  It was a step in the process as outlined in the chat.

14    MR. BARRAT:  It was a step, but would you consider a--but would you

15    consider that a substantial step?

16    DEPUTY FRAME:  As I just said, that's more of a step than most

17    predators I talk to take.

(Jury Trial Tr., Doc. 262 at 273:6-17).

This cross-examination by trial counsel goes on for several transcript pages in a similar fashion, covering many different approaches to arguing against finding a substantial step.  Given the sheer volume of Petitioner's discussion with "Melissa" regarding plans to meet with her in person (Jury Trial Tr., Doc. 262 at 127-152), and the amount of time Mr. Barrat had already spent arguing this very point, it is well within the range of professionally reasonable conduct for trial counsel to have concluded that any further exploration of this argument would be futile, or potentially even damaging, to Petitioner's case.  Furthermore, Petitioner has failed to produce any facts to indicate that further argument on this topic had a reasonable probability of producing a different result at trial.  *See Strickland,* 466 U.S. at 694.

For the foregoing reasons, the undersigned finds that Petitioner has produced no facts to indicate that trial counsel committed professionally unreasonable error by failing to argue against finding of substantial step.  Therefore, the undersigned recommends that this claim be dismissed.

30

**(f) Petitioner's claim that trial counsel was constitutionally ineffective for failure to challenge alleged defects in the search warrant is without merit.**

The Petitioner alleges that trial counsel rendered ineffective assistance by purposefully failing to challenge alleged defects in the search warrant which authorized the F.B.I.'s January 5, 2007 search of his apartment. (Amd. Mot., Doc. 416-1 at 8). This claim is factually incorrect. Mr. Barrat did in fact move to suppress the results of the search (Doc. 74 at 2-3), and Agent Chance testified as to the reason behind the altered search-by date at the June 10, 2008 hearing on that motion.

> 12    Q: All right. Okay. Now with respect to the search warrant face
> 13    sheet again, the one that was signed by Magistrate Judge Thomas
> 14    Smith, it originally indicated a date for the search of December 29th,
> 15    and I can't read that year but that was scratched out, correct?
> 16    A: Correct.
> 17    Q: Can you explain what happened there?
> 18    The Judge did that. The - I believe that was the date we had it
> 19    signed and he said, "Well, I need to give you ten (10) days for this."
> 20    Cross it out and wrote the date in.

(Mtns. Hrg. Tr., Doc. 125-1 at 28:12-20). On that issue, the undersigned ruled in the Government's favor, and Petitioner has not shown that any further argument or evidence would have been helpful to his case. Mr. Barrat's performance in this respect was in no way deficient.

For the foregoing reasons, the undersigned finds that Petitioner has failed to establish any factual basis for the above claim. Therefore, the undersigned recommends that this claim be dismissed.

**(g) Petitioner's claim that trial counsel failed to raise a "search warrant issue" regarding evidence of child pornography on Petitioner's computers is without merit.**

Petitioner also claims that trial counsel purposefully neglected to "address the search warrant issue" regarding materials not found on any of Petitioner's electronic storage devices. (Doc. 416-1 at 8). Petitioner appears to claim that trial counsel should have moved to suppress the searches of Petitioner's computers due to the fact that no child pornography was recovered therefrom. (*See id.*)

The charge upon which Petitioner was convicted under Count Two (2) of the Indictment, Transfer of Child Pornography, does not list the possession of child pornography as an element. *See* 18 U.S.C. § 2552(a). The Petitioner was neither charged with nor convicted of Possession of Child Pornography. Additionally, while it is true that no child pornography was recovered from Petitioner's computers, it is untrue that no evidence was recovered. Among other images, non-explicit images of "S.M." wearing a Santa hat were found saved to one of Petitioner's computers.

However, even if the search warrant had uncovered nothing of value, a search warrant's failure to uncover evidence does not render it defective. The validity of a search warrant depends solely on a finding of probable cause. *See United States v. Ventresca*, 380 U.S. 102, 107-108 (1965). "There is a large difference between the two things to be proved (guilt and probable cause), as well as between the tribunals which determine them, and therefore a like difference in the quanta and modes of proof required to establish them." *Brinegar v. United States*, 338 U.S. 160, 173 (1949). From the voluminous transcripts of the chats between the Petitioner and the undercover personae of Deputy Frame and Agent Southland, there was no doubt as to the sufficiency of probable cause for issuance of a search warrant. Further, sufficiency of probable cause is one of the few areas of this case in which Petitioner raised no argument.

For the foregoing reasons, the undersigned finds that Petitioner has produced no facts to indicate that trial counsel committed any error in failing to raise this argument. Therefore, the undersigned recommends that this claim be dismissed.

> **(h) Petitioner's claim that trial counsel was constitutionally ineffective for failure to object to the application of U.S.S.G. § 2G2.1 is without merit.**

Petitioner claims that he received ineffective assistance of counsel through trial counsel's failure to object to the Court's application of a cross-reference for Production of Child Pornography. (Amd. Mot., Doc. 416-1 at 9). The Court applied this cross-reference based on the fact that the minor "S.M." created sexually explicit images of herself upon the Petitioner's request. (Sent. Hrg. Tr., Doc. 319 at 5: 21-25, 6: 1-9). However, Mr. Barrat did in fact object to the application of this cross-reference.

> 13    MR BARRAT:  Okay, Objection Number 2, any
>
> 14    activity involving ("S.M.") should be disregarded.  It is
>
> 15    outside the allegations contained within the indictment in
>
> 16    this case.  And then I cited different paragraphs. ("S.M.")
>
> 17    was a 404(b) witness, not part of the indictment in this
>
> 18    case, and that's why I would ask that she not be
>
> 19    considered in the sentencing in the presentence
>
> 20    investigation.
>
> 21    THE COURT: That objection is overruled.

(Sent. Hrg. Tr., Doc. 319 at 5:13-21). Trial counsel clearly did exactly as the Petitioner believes he should have at the sentencing hearing. Therefore, Petitioner has identified no error in trial counsel's conduct.

For the foregoing reasons, the undersigned finds that Petitioner has produced no facts to indicate that trial counsel committed any error in failing to raise this argument. Therefore, the

undersigned recommends that this claim be dismissed.

### D. Allegedly Unlawful Searches of Petitioner's Computers and Residence

In his Amended Motion, Petitioner claims that two illegal searches of his residence and personal computers were conducted. (Amd. Mot., Doc. 416 at 8). Specifically, Petitioner claims that the initial search of his residence and computers executed on January 5, 2007 was illegally conducted because F.B.I. agents arrived at his residence on that date without a copy of the search warrant on their person. (Doc. 416-1 at 23). He also claims that he did not receive a copy of the search warrant. (*Id*). He further claims the search warrant to have been facially defective because the date of execution of the warrant, "December 29, 2006," had been crossed out with pencil and replaced with "January 5, 2007." *(Id.)*. Petitioner's final assertion about the initial search is that F.B.I. agents violated his rights and the rights of other tenants by searching common areas of the apartment building, which were used by persons other than Petitioner. *Id.*

Petitioner claims the second illegal search took place two years after the initial seizure of his computers, when agents allegedly searched "storage devices" without a search warrant. (Doc. 416-1 at 23). Petitioner provides no further information to indicate to what "storage devices" he refers, their contents, or why this constitutes a violation of his rights. The Government believes Petitioner is referencing the manner in which certain cases of compact discs were returned to him at his request after the conclusion of the trial. (Resp., Doc. 429 at 41). In that transaction, the Government performed a cursory examination of the property in question to ensure they did not inadvertently return any child pornography to Petitioner. *(Id.)*.

Petitioner has procedurally defaulted as to these issues by failing to raise them on appeal. *See* 28 U.S.C. § 2255(e); *see also United States v. Hargrove*, 625 F.3d 170 (4th Cir. 2010). The Fourth Circuit has established limited circumstances under which constitutional habeas issues

which could have been, but were not, raised on appeal may be entertained by the Court in a §

2255 Petition. "In order to proceed on a § 2255 motion based on trial errors to which no

contemporaneous objection was made, a convicted defendant must show both (1) 'cause'

excusing his procedural default, and (2) 'actual prejudice' resulting from the errors of which he

complains." *United States v. Maybeck*, 23 F.3d 888 (4th Cir. 1994)(quoting *United States v.*

*Frady*, 456 U.S. 152, 167-168 (1982))(internal citations omitted). 'Actual prejudice' is

established only by a showing that the "error had substantial and injurious effect or influence in

determining the jury's verdict." *Satcher v. Pruett*, 126 F.3d 561, 567 (4th Cir. 1997)(quoting

*Brecht v. Abrahamson*, 507 U.S. 619 (1993)(internal citations omitted); *see also Wheeler v.*

*United States,* 2011 WL 2491376, *9 (N.D. W. Va. April 25, 2011).

Additionally, in the absence of an established 'cause,' the Petitioner may be excused

from procedural default by establishing 'actual innocence.' *See Bousley v. United States*, 523

U.S. 614, 621 (1998). To establish 'actual innocence' for purposes of excusing a procedurally

defaulted claim, Petitioner must show that "it is more likely than not, in light of all the evidence,

that no reasonable juror would have convicted him." *Id.* The 'actual innocence' standard refers

to *factual* innocence, i.e. that the Petitioner did not commit the act for which he was convicted,

and not merely *legal* innocence, such as a newly-asserted affirmative defense. *See* e.g. *Murray*

*v. Carrier*, 477 U.S. 478, 494 (1986); *see also Wheeler,* 2011 WL 2491376 at *9.

In this respect, Petitioner has failed to meet his burden of showing that either of these

allegedly unlawful searches rise to satisfy the standard of excusing procedural default. Petitioner

has neither shown nor even alleged cause or actual prejudice, as he has failed to make any

assertion as to how the jury verdict would have been different absent these alleged irregularities.

Petitioner has additionally failed to allege actual innocence of the offense for which he was

convicted, and has failed to provide any factual or legal support for the above claims beyond a bare assertion that the facts of the situation are as he says.

Therefore, the undersigned recommends that this claim be dismissed because Petitioner has failed to state any grounds among cause, actual prejudice, or actual innocence which would excuse his search warrant claims from procedural default.

### E. Alleged Prosecutorial Misconduct

In his Amended Motion, Petitioner claims that Mr. Perri, the Assistant U.S. Attorney who prosecuted his case, engaged in prosecutorial misconduct by proceeding to prosecute the case in spite of allegedly being aware of certain exculpatory or mitigating evidence. (Amd. Mot., Doc. 416 at 25). Specifically, Petitioner claims the Assistant U.S. Attorney was aware of his alleged efforts to investigate and report "Melissa" to school authorities as an "at-risk child." (*Id.*).

Petitioner has procedurally defaulted as to these issues by failing to raise them on appeal. Petitioner has additionally failed to meet his burden of showing that the Assistant U.S. Attorney's knowledge of such facts would rise to satisfy the standard of excusing procedural default. Petitioner has neither shown nor even alleged cause or actual prejudice, as he has failed to make any assertion as to how the jury verdict would have been different absent these alleged irregularities. Petitioner has also failed to allege actual innocence of the offense for which he was convicted, and has failed to provide any factual or legal support for the above claims beyond a bare assertion that the facts of the situation are as he says.

Therefore, the undersigned recommends that this claim be dismissed because Petitioner has failed to state any grounds among cause, actual prejudice, or actual innocence which would excuse his alleged prosecutorial misconduct claims from procedural default.

### V.    Recommendation

Based upon a review of the record, the undersigned recommends that Petitioner's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civil Action No. 3:12-cv-124, ECF No. 1; Criminal Action No. 3:07-cr-58, ECF No. 416) be **DENIED** and **DISMISSED** because the totality of Petitioner's claims are lacking in either factual basis or legal merit.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Petitioner John Hargrove by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

**DATED**: September 18, 2013

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE